## Grim et al. v. Griffith.

[No. 5,048.    Filed February 3, 1905.]

1. Fraud.—*Execution of Instrument Without Reading.—Relying Upon Representations of Opposite Party.*—Where plaintiff and his wife executed an assignment of a title bond to the defendants, one of whom wrote such assignment and included therein plaintiff's personal property, such defendants being the parents of plaintiff's wife, who at the time lay fatally sick, and the plaintiff and his wife signed such assignment without reading it, upon the representation by defendants that it contained only the title bond, the question as to whether a fraud was practiced upon plaintiff was for the jury. p. 561.

2. Judgment.—*Dismissal of Complaint.—Cross-Complaint.—Property Not Included in Judgment.—Res Judicata.*—Where plaintiff dismisses his cause before the court announces its decision, but the court renders judgment against plaintiff on a cross-complaint, but the judgment fails to include the personal property mentioned in such cross-complaint, there is no *res judicata* as to such personal property. p. 562.

From Huntington Circuit Court; *John Q. Cline,* Special Judge.

Action by David M. Griffith against Eli P. Grim and wife. From a decree for plaintiff, defendants appeal. *Affirmed.*

*C. W. Watkins* and *H. C. Morgan,* for appellants.
*Lesh & Lesh* and *S. E. Cook,* for appellee.

Robinson, P. J.—Suit by appellee to recover possession of certain personal property. Appellants answered: (1) General denial; (2) former adjudication; (3) title to the property through a written assignment signed by appellee and his wife, Florence E. Griffith, and a delivery of the property to appellants; that the personal property belonged to Florence E. Griffith, and the assignment was of all interest in certain land which she had contracted to purchase, "including all personal property contained in the same premises." To the second paragraph of answer appellee replied: (1) Denial; (2) admitting that the personal

property was embraced in the complaint in a former action which was submitted to the court for trial, with a request for a special finding; that before the finding was made the action was dismissed. To the third paragraph of answer appellee replied: (1) Denial; (2) that appellant Eli P. Grim wrote the alleged assignment, acting for himself and his co-appellant; that Florence E. Griffith was the daughter of appellants; that prior to the date of the assignment appellee and his wife became sick, and appellee was unable to keep up the payments on the land described in the third paragraph of answer; that appellant Eli P. Grim then proposed to appellee that he and his wife should turn the land over to him in trust, and that he would pay thereon, in addition to what appellee had paid ($600), a sufficient sum to obtain a deed; that appellant Grim procured the written contract, and informed appellee that he did not want to take any advantage of him, and that he and his wife should sign it so that he could pay it on the property; that appellee's wife signed it before it was signed by appellee; that appellee, on account of the relationship existing between him and appellants, had confidence in and trusted them, and believed the representations of appellants that the assignment was only for the purpose of saving the land for appellee, and, relying on such representations as to its object, purpose and contents, did not read it before signing it; that the personal property mentioned in the assignment was and is his property, and that appellant included the same in the assignment without the knowledge or consent of appellee, and for the purpose of defrauding and cheating him; that when he signed the same he had no knowledge that it included the personal property. The questions argued by counsel are those arising under the motion for a new trial.

Complaint is made of certain instructions, concerning which appellants' counsel say in their brief, "that while in the abstract they are all correct, yet there is no evidence whatever to sustain the theory of any one of them."

Grim *v.* Griffith.

1. It appears that Florence E. Griffith, wife of appellee, had entered into a written contract with one Purviance to purchase a certain lot. Certain payments were made by appellee and his wife, and on April 16, 1902, other payments being due which they were unable to make, they executed the following: "We hereby convey all right, title and interests to the above described real estate, also including all personal property contained in the same premises, to be assigned to E. P. Grim and Harriet B. Grim. [Signed.] Florence E. Griffith, D. M. Griffith. Attest: Mrs. E. P. Grim, E. P. Grim, witness." The property in dispute consists of household goods, and appellants claim to own them through this assignment. At the time it is claimed the assignment was made, appellee's wife was at the house of her parents—appellants—and was sick of a disease of which she died on the 5th day of the following month. There is some evidence that the assignment was to be only of the title bond or contract as security to appellants for future payments to be made by them on the land; that, as read to appellee before he signed it, by one of the appellants who had written it, it was an assignment of the bond or contract only, and made no reference to the personal property; that it was attached to or written on the bond or contract in which appellee's name did not appear; that appellee's wife, then fatally ill, signed the assignment immediately before appellee signed it; that, some days after the paper was signed, appellee first learned that the assignment included the personal property. When all the facts given in evidence, the relationship existing between the parties and the circumstances surrounding the parties at the time the paper was signed, are taken together, we can not say that the record fails to show any excuse for appellee's failure to read the paper before he signed it. The law required that the appellee should exercise prudence in signing the paper, and, if he failed to exercise ordinary prudence, a court can give

him no relief. But in determining whether he did exercise ordinary prudence, all the circumstances surrounding the parties at the time, are to be considered in connection with what was actually said and done. It can not be said that the record contains nothing to show that a fraud was practiced upon appellee when he was induced to sign the paper.

"Ordinarily," said the court in *Robinson* v. *Glass* (1884), 94 Ind. 211, "one contracting party has no right to rely upon the statements of the other as to the character or contents of a written instrument (this, indeed, is only another form of stating the general rule) ; but while this is true, it is also true that if a known trust and confidence is reposed in the person making the representations, and there is a relationship justifying such trust and confidence, then the person to whom the representations are made may rely upon them." See *Peter* v. *Wright* (1855), 6 Ind. 183 ; *Matlock* v. *Todd* (1862), 19 Ind. 130. Upon this branch of the case it can not be said there was no evidence to sustain the theory of the court's instructions, and we think the record discloses that there was sufficient evidence to submit to the jury, under proper instructions, the question of whether or not a fraud was practiced upon appellee in the execution of the assignment.

Upon the question of whether or not there was any consideration for the transfer of the personal property, the evidence is directly conflicting, but there is evidence that there was none.

2. It appears that appellee had, some time before this suit was filed, brought an action in which he claimed that the property mentioned in this assignment was to be held by the appellants as security for such sum as it was necessary for them to pay in order to meet the terms of the title bond ; that appellants paid the balance due on the bond, and took a deed ; that appellee tendered to appellants the amount they had paid, and interest, and demanded a conveyance of the real estate and possession of the personal property, and

asked that the amount due appellants be ascertained; that, upon payment to them of such sum, they be required to convey the real estate to appellee; that his title be quieted, and that he have possession of the personal property. Upon issues formed, the court was requested to make a special finding of the facts, with conclusions of law. The record evidence introduced recites that the case was submitted to the court for trial, and, "the evidence being heard, the court now holds this cause under advisement." The entry next following recites that the parties appeared, and that the plaintiff (appellee) dismissed his complaint over appellant's objection. The evidence does show that in that action there was a cross-complaint by the appellants in this suit, and that some days after the complaint was dismissed the court made a finding, and stated conclusions of law in appellants' favor—that appellants' title to the real estate be quieted—but nothing is said in the finding or conclusion of law concerning the personal property. It does not appear that appellants dismissed their complaint after the court had announced or commenced to announce its finding. It has often been held that after the court announces its decision the action can not be dismissed to defeat a judgment. But so far as the record discloses the complaint was dismissed before any announcement had been made by the court as to what the finding would be. And in the finding which was subsequently made there is no adjudication concerning the personal property in controversy in the case at bar.

We find no error in the record for which the judgment should be reversed. Judgment affirmed.